UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PW STOELTING, L.L.C.,

                Plaintiff,

      v.                                      Case No. 16-C-381

STEVEN J. LEVINE, et al.,

                Defendants.

---

## DECISION AND ORDER ON SUMMARY JUDGMENT

---

Plaintiff PW Stoelting, L.L.C. (PW Stoelting) filed this action against Defendants Advanced Frozen Treat Technology, Inc. (AFTT), a California company; Prism Marketing Corporation (Prism), a Washington company; and Steven J. Levine, a Washington resident and President who is Director of AFTT and Prism, alleging that Defendants breached their contract by not paying PW Stoelting for certain orders and infringed upon PW Stoelting's trademark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). This court has jurisdiction over the trademark claim pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338, and jurisdiction over the breach of contract claim under 28 U.S.C. § 1367 and 28 U.S.C. § 1332. Currently before the court are a number of motions: PW Stoelting's motion for partial summary judgment (ECF No. 86), Defendants' motion for summary judgment (ECF No. 94), PW Stoelting's motion to substitute (ECF No. 108), Defendants' motion to not expedite PW Stoelting's motion to substitute (ECF No. 116), PW Stoelting's motion to supplement the fact record (ECF No. 123), and Defendants' motion to strike PW Stoelting's motion to supplement (ECF No. 128). For the reasons that follow, PW Stoelting's motion for partial summary judgment,

motion to substitute, and motion to supplement will be granted and Defendants' motion for summary judgment, motion to not expedite, and motion to strike will be denied.

## BACKGROUND

**A.      Termination of Distributorship Agreement**

PW Stoelting is a Wisconsin-based manufacturer of food service and cleaning equipment, including frozen confection equipment. PW Stoelting entered into separate distributorship agreements with Prism on February 15, 2011, and with AFTT on February 28, 2011—both of which are owned by Levine—to appoint them as authorized distributors of PW Stoelting's products. Each agreement contained a choice of law provision—California for AFTT and Washington for Prism. The agreements, among other things, established expectations regarding product and parts inventory, as well as yearly sales goals. The agreements also contained the following identical provisions, here taken from the agreement with AFTT, regarding termination of the distributorship agreements:

> 7.1 Unless sooner terminated as provided in Section 7.2 or Section 7.3 below, this Agreement shall remain in effect until terminated by either party, without cause, upon thirty (30) days prior written notice thereof to the other.

> 8.4 Notification required or permitted hereby shall be deemed given upon enclosure thereof in an adequately post-paid envelope, deposited in a U.S. mail box, and addressed to the party to be given notice at the address to which that party has previously requested, by notice hereunder, that notices be sent or, if no such request has been made, at the address listed for that party in this Agreement.

ECF No. 90-1 at 5–6.

At some point during the course of the next few years the parties' business relationship soured and on December 7, 2015, PW Stoelting sent a letter via UPS to Defendants' counsel, Attorney Raymond Schreck, that stated the following:

2

> The purpose of this letter is to inform you of Stoelting's decision to terminate the distributorship agreement between Stoelting LCC and AFTT dated February 28, 2011, as well as the distributorship agreement between Stoelting LLC and Prism dated February 15, 2011 (the Agreements). This termination is pursuant to the provisions of Section 7.1 of each of the Agreements. That section gives either party the right to terminate the agreement, without cause, upon 30 days prior written notice to the other party. The effective date of the termination of the Agreements will be January 31, 2016.

ECF No. 91-2 at 1. Just prior to when PW Stoelting sent the letter, Schreck informed PW Stoelting that he was representing Defendants in their dealings with PW Stoelting and stated that all future communications related to Defendants should be directed to him: "[N]ow that I HAVE been identified as having been retained to represent my clients on legal and mixed legal-factual matters concerning Vollrath, PW Stoelting, and any other Vollrath Stoelting entity, from this point FORWARD, the communications NOW need to go through the attorneys—that is, through me, not my clients." Plaintiff's Proposed Findings of Fact (PPFOF), ECF No. 110 at ¶ 47. PW Stoelting's letter was received by Attorney Schreck more than 30 days before January 31, 2016.

On February 1, 2016, Schreck sent a letter to PW Stoelting's counsel advising them that Defendants were taking the position that the December 7, 2015 notice was ineffective and that the distributorship agreement was still in effect because it was sent to counsel rather than to AFTT and Prism directly and because it was not sent via USPS. The next day PW Stoelting's counsel sent AFTT and Prism copies of the notice of termination of the distributorship agreement via USPS.

On March 18, 2016, PW Stoelting sent a cease and desist letter to Defendants demanding that they change their websites and otherwise stop representing themselves to be authorized distributors of Stoelting-branded equipment.

PW Stoelting commenced this lawsuit on March 28, 2016. On December 31, 2016, The Vollrath Company, L.L.C. (Vollrath) merged with PW Stoelting, its wholly owned subsidiary. Vollrath was the survivor of this merger and PW Stoelting, the non-surviving entity, continued to operate as a division of Vollrath.

**B.    Renewal of the Stoelting Trademark**

On January 31, 2016, Vollrath's intellectual property counsel received an email from the United States Patent and Trademark Office (USPTO) stating that the Stoelting trademark, U.S. Trademark RN0823348, was set to expire on January 31, 2017, absent the filing of a declaration of use and/or excusable non-use and an application for renewal under §§ 8 and 9 of the Trademark Act prior to that date. On January 13, 2017, after PW Stoelting merged with Vollrath, Vollrath's counsel filed the required declaration and application. In the application, the owner of the mark was identified as PW Stoelting, L.L.C. The Stoelting trademark was renewed by the USPTO on March 10, 2017.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The fact that the parties filed cross-motions for summary judgment does not alter this standard. In evaluating each party's motion, the court must "'construe all inferences in favor of the party against whom the motion under consideration is made.'" *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is

some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A.    PW Stoelting's Standing and Motion to Substitute Vollrath

Defendants argue that PW Stoelting lacks standing because it ceased to exist as a legal entity after it merged with Vollrath at the end of 2016.   PW Stoelting, citing to Federal Rule of Civil Procedure 25, asserts that "even after a party's interests are transferred after litigation is underway, the original party may maintain the suit." Pl.'s Reply to Defs.' Motion for Summ. J., ECF No. 100 at 5.  In addition, PW Stoelting filed a Civil L.R. 7(h) motion to substitute Vollrath for PW Stoelting as the plaintiff in this case that Defendants oppose.

Regarding Defendants' assertion that PW Stoelting does not have standing to maintain this case, Rule 25 is clear that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  Fed. R. Civ. P. 25(c).

> "The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named."

*Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985) (quoting 7A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1958, at 664–65 (footnotes omitted)).

"[I]f a plaintiff transfers an interest that is the subject of a lawsuit, the transferee stands in its shoes."

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 305 F. Supp. 2d 939, 956 (E.D. Wis. 2004), *aff'd in part*, *rev'd in part*, 402 F.3d 1198 (Fed. Cir. 2005) (citing *Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc.*, 53 F.3d 851, 852 (7th Cir.1995)). Although, pursuant to Wis. Stat. § 183.1205, PW Stoelting ceased to exist and its interest transferred to Vollrath after the merger, Rule 25 permits PW Stoelting to continue the action.

Rule 25(c) likewise permits the court to allow substitution of the parent company for the original plaintiff where there is no prejudice or harm to the defendants. *Otis Clapp & Son, Inc.*, 754 F.2d at 743. No harm or prejudice has been shown here. Substitution of Vollrath for PW Stoelting will not change the substantive rights of the parties given the transfer of PW Stoelting's assets to Vollrath at the time of the merger by operation of law. *See Feener Bus. Sch., Inc. v. Speedwriting Pub. Co.*, 249 F.2d 609, 612 (1st Cir. 1957) ("Only the sheerest technicality was involved in the order of substitution, whereby the parent corporation, having absorbed its wholly owned subsidiary by merger, was allowed to be substituted *nunc pro tunc* for the original nominal plaintiff in this case. We cannot see that the substitution would involve Feener Business Schools, Inc., or Carleton L. Feener individually in any possible prejudice." (citation omitted)). Accordingly, PW Stoelting's motion to substitute Vollrath as the plaintiff will be granted.

**B.      Distributorship Termination Date**

PW Stoelting argues that the notice it sent Defendants in December substantially complied with the notice requirements of the contract and that, as a result, the distributorship agreement between it and Defendants was terminated on January 31, 2016. Defendants first argue that the notice did not substantially comply with the agreement and further that more than substantial compliance is required. Even if the notice did substantially comply with the distributorship agreement, Defendants next argue

that their relationship with PW Stoelting is subject to California and Washington state franchise law, both of which require good cause for termination of an agreement.

### 1. Substantial Compliance

PW Stoelting asserts that January 31, 2016, should be held to be the effective date the distributorship agreement between it and Defendants was terminated as a result of the notice PW Stoelting sent to Defendants' attorney in early December of 2015. Defendants argue that the contract specifies how notice is to be given and contend that because PW Stoelting's notice of termination was sent by UPS and delivered to Defendants' counsel, rather than sent directly to Defendants via USPS, that the notice was inadequate and failed to comply with the requirements set forth in the distributorship agreement.

PW Stoelting's December 7, 2015 notice was sufficient to terminate the agreement between it and Defendants because it substantially complied with the termination provisions set forth in the agreements. Both California and Washington generally only require substantial compliance with a contract provision absent a clear intention otherwise. *Producers' Holding Co. v. Hill*, 256 P. 207, 208 (Cal. 1927) ("[P]erformance of a contract need not, in all cases, be literal and exact . . . substantial performance is all that is required."); *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wash. App. 205, 220, 317 P.3d 543, 550 (Wash. Ct. App. 2014) ("The general rule with respect to compliance with the terms of a bilateral contract is not strict compliance, but substantial compliance." (citing 15 RICHARD A. LORD & SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 44:52, at 217 (4th ed.2000))). "[I]n California a party is deemed to have substantially complied with an obligation only where any deviation is unintentional and so minor or trivial as not substantially to defeat the object which the parties intend to accomplish." *Rouser v. White*, 825 F.3d 1076, 1082 (9th

Cir. 2016) (internal quotations and citations omitted). In Washington, "[s]ubstantial performance is said to be the antithesis of material breach; if it is determined that a breach is material, or goes to the root or essence of the contract, it follows that substantial performance has not been rendered . . . ." *DC Farms, LLC*, 179 Wash. App. at 220.

Although the letter was sent via UPS rather than USPS, it is clear that Defendants were made aware of the notice and that the letter clearly informed Defendants of their intention to terminate the agreement on January 31, 2016. Further, the notification provision allows for requests by the parties to mail notice to different addresses at the parties' requests and Defendants' counsel unequivocally stated that all communication regarding the parties should be sent to him.

Defendants' portrayal of the notification provision as a "time is of the essence" clause is contravened by the lack of express language stating so. *Baypoint Mortg. Corp. v. Crest Premium Real Estate etc. Tr.*, 168 Cal. App. 3d 818, 825, 214 Cal. Rptr. 531, 535 (Cal. Ct. App. 1985) ("Time is not the essence of a contract unless it is so declared."); *Cauff Lippman & Crane Aviation, Inc. v. The Republic of Nauru,* 163 F.3d 605, 1998 WL 657716, at *1 (9th Cir. 1998) (unpublished) ("Under Washington law, time is of the essence in a contract 'whenever it appears to have been the intention of the parties to make time of the essence.'" (quoting *Univ. Props., Inc. v. Moss*, 63 Wash. 2d 619, 388 P.2d 543, 545 (Wash. 1964))). Defendants' reliance on the word "shall" in the provision discussing notice, 8.4, is also of no help. Here, it simply means that notice must be deemed given when what is described occurs, not that this is the *only* means by which notice may be given. As PW Stoelting states in its reply, "The language does not impose an obligation to provide notice only by United States mail. The plain language of this contractual provision is clear, and does not require either party to give notices in a certain way." Pl.'s Reply, ECF No. 118 at 10. Finally, Defendants state that

8

"[i]n Washington, where a contract has a mandatory notice of claim provision, substantial compliance is not sufficient, nor is actual notice." Defs.' Resp., ECF No. 109 at 14. Simply put, neither of the contract provisions at issue are a notice of claim provision. The provisions address how to terminate the contract and a manner by which notice may be given. They do not set forth a contractual obligation to provide notice to the other party regarding a claim. Thus, the provisions are distinguishable from those discussed in *Mike M. Johnson, Inc. v. Cty. of Spokane*, 78 P.3d 161 (Wash. 2003). It follows that PW Stoelting substantially complied with termination and notice provisions of the contract.

### 2. Applicability of California and Washington Franchise Law

Defendants' argument that the termination was not effective because the agreement is subject to California and Washington franchise law as they were required to pay a franchise fee to PW Stoelting also fails.

### I. California Law

Turning first to California law, under the California Franchise Relations Act

"franchise" means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:

> (a) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and

> (b) The operation of the franchisee's business pursuant to that plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

> (c) The franchisee is required to pay, directly or indirectly, a franchise fee.

Cal. Bus. & Prof. Code § 20001 (West). "[F]ailure to satisfy any statutory element of the franchise definition is fatal." *Thueson v. U-Haul Int'l, Inc.*, 144 Cal. App. 4th 664, 670, 50 Cal. Rptr. 3d 669, 672 (Cal. Ct. App. 2006). Here, AFTT asserts that it is a franchisee because it was required to pay a franchise fee. "'Franchise fee' means any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business under a franchise agreement, including, but not limited to, any payment for goods and services." Cal. Bus. & Prof. Code § 20007 (West). "The purchase or agreement to purchase goods at a bona fide wholesale price if no obligation is imposed upon the purchaser to purchase or pay for a quantity of goods in excess of that which a reasonable businessperson normally would purchase by way of a starting inventory or supply or to maintain a going inventory or supply," however, is not considered the payment of a franchise fee. Cal. Bus. & Prof. Code § 20007(a). (West).

AFTT was not a franchisee because it was not required to purchase more than a reasonable quantity of goods at wholesale prices. The California Department of Business Oversight's guidance on franchises in California defines bona fide wholesale price as "the price at which goods are purchased and sold by a manufacturer or wholesaler to a wholesaler or dealer where there is ultimately an open and public market in which sales of the goods are effected to consumers of the goods." CALIFORNIA DEPARTMENT OF BUSINESS OVERSIGHT, *Commissioner's Release 3-F: When Does An Agreement Constitute a "Franchise", June 22, 1994,* http://www.dbo.ca.gov/commissioner/releases/3-f.asp (last visited Dec. 17, 2018). AFTT purchased equipment at 45% of the list price and parts and accessories at 50% of the list price. In support of their claim that these prices are wholesale prices, PW Stoelting relies on the affidavit of Richard Koehl, the former general manager of PW Stoelting and current head of the Stoelting division of

Vollrath, who states the prices AFTT and Prism paid "are in line with the prices paid by all of Stoelting's domestic distributors" and that these prices "are consistent with the wholesale pricing system in the frozen treat equipment industry." Koehl Aff., ECF No. 90 at ¶¶ 13–14. While Defendants' dispute Koehl's assertion, they have provided no evidence of their own to contradict Koehl's statement regarding wholesale prices.

Regarding the amount of required inventory, AFTT was expected to maintain an inventory of parts and equipment collectively worth $68,305.50. This required inventory was equal to 3.8% of AFTT's expected sales goal of $1,800,000 for 2011, which AFTT exceeded. During the course of Defendants' distributorship, AFTT and Prism collectively purchased over $20,000,000 worth of products and parts from PW Stoelting. Given the low cost of the required inventory compared to the dollar amount of AFTT's sales, no reasonable jury would find that this required inventory level at wholesale prices exceeds what a reasonable business person would normally purchase, and thus the mandatory purchases do not constitute a franchise fee under California law.

### ii. Washington Law

Turning next to Washington law, under the Franchise Investment Protection Act

"Franchise" means:

(a) An agreement, express or implied, oral or written, by which:

(i) A person is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan prescribed or suggested in substantial part by the grantor or its affiliate;

(ii) The operation of the business is substantially associated with a trademark, service mark, trade name, advertising, or other commercial symbol designating, owned by, or licensed by the grantor or its affiliate; and

11

(iii) The person pays, agrees to pay, or is required to pay, directly or indirectly, a franchise fee.

Wash. Rev. Code Ann. § 19.100.010(6) (West). "Franchise fee" means "any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to . . . any payment for the mandatory purchase of goods or services or any payment for goods or services available only from the franchisor . . . ." § 19.100.010(8). "The purchase or agreement to purchase goods at a bona fide wholesale price," however, is not considered payment of a franchise fee. § 19.100.010(8)(a). Here Prism, like AFTT, purchased merchandise at 45% of the list price and parts and accessories at 50% of the list price and was required to maintain an inventory totaling $30,000, equivalent to 15% of Prism's 2011 sales goal of $200,000, which it met. In Washington, in order "[t]o qualify as a franchise fee, a fee must constitute an 'unrecoverable investment' by the franchisee in the franchisor," *Atchley v. Pepperidge Farm, Inc.*, No. CV-04-452-EFS, 2012 WL 6057130, at *9 (E.D. Wash. Dec. 6, 2012) (citing *Corp. Res. Inc., v. Eagle Hardware & Garden, Inc.*, 115 Wash. App. 343, 350, 62 P.3d 544 (Wash. Ct. App. 2003); *Wright–Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 136 (7th Cir.1990)), and is made for "the right to enter into or to continue a business under a franchise agreement." *Bryant Corp. v. Outboard Marine Corp.*, No. C93-1365R, 1994 WL 745159, at *2 (W.D. Wash. Sept. 29, 1994), *aff'd sub nom.*, 77 F.3d 488 (9th Cir. 1996). Here, Prism's required purchase on inventory was recoverable, as Prism could still sell the equipment after the distributorship agreement was terminated and the contract provided an option for PW Stoelting to purchase the items back after termination. *See* ECF No. 90-1 at 5 ("7.7 Upon termination of this Agreement, Supplier shall have the option to repurchase any or all of the Products sold to Distributor hereunder during the preceding one (1) year

12

. . . ."). Further, the purchase of inventory was not for the right to enter into the distributorship agreement, but rather to ensure that Prism had inventory to sell to customers. It thus follows that the mandatory purchase of inventory for sale at wholesale prices falls under the exemption and is not a franchise fee under Washington law.

As a result, the distributorship agreement is not subject to either California or Washington franchise law and PW Stoelting was free to terminate the agreements without cause pursuant to the terms of the agreements. It follows that the distributorship agreement between PW Stoelting and Defendants was terminated as of January 31, 2016. Accordingly, PW Stoelting's motion for partial summary judgment is granted.

## C. Trademark Claim

### 1. Validity of the Stoelting Trademark

Defendants argue that the Stoelting trademark was not renewed because PW Stoelting, not Vollrath, was identified as the owner of the trademark when Vollrath filed its declaration of use and application for renewal under §§ 8 and 9 of the Trademark Act. Because of that error, combined with the fact that the deadline for filing the documents as well as the six-month grace period had passed, Defendants argue Vollrath's attempt to renew the Stoelting trademark was void *ab ignitio*. Consequently, Defendants argue that the Stoelting trademark should be cancelled by this court.

Section 8 of the Lanham Act requires a trademark owner to file an affidavit or declaration of use or excused non-use, among other documents, before the fifth and tenth years of registration. 15 U.S.C. § 1058(a), (b)(1)(A). These documents must be filed within the one-year period immediately preceding the expiration or within the six-month grace period that immediately follows the expiration. § 1058(a)(1)–(2). "Filing by the current owner is a statutory requirement that must be met

prior to the expiration of the six-month grace period established under 15 U.S.C. § 1058(c)(1)." *In Re Media Cent. Ip Corp.*, 65 U.S.P.Q.2d 1637 (Com'r Pat. & Trademarks July 2, 2002).

Although Vollrath does not deny the error in the documentation it filed with the USPTO, it asserts that the validity of the mark should be decided by the USPTO rather than this court. After being alerted to its error by Defendants' summary judgment motion, intellectual property counsel for Vollrath filed a Section 7 Amendment Request for the mark to remedy the error on August 10, 2018. "The USPTO may make a correction to a registration in appropriate cases, upon written request by the owner of the registration." Trademark Manual of Examining Procedure § 1109.10. "Whenever a mistake has been made in a registration and a showing has been made that the mistake occurred in good faith through the fault of the owner, the Director may issue a certificate of correction." 37 C.F.R. § 2.175(a).

Subsequent to the motions for summary judgment being fully briefed, PW Stoelting filed a 7(h) motion to supplement the fact record with proof that the USPTO granted its request to amend and now lists Vollrath as the owner of the mark in question. Defendants argue that PW Stoelting's motion should be struck, stating that the supplement is untimely and that PW Stoelting's motion is, in essence, an unauthorized sur-reply. Regarding timeliness, PW Stoelting filed its Section 7 Amendment Request less than a month after Defendants' summary judgment motion identified the issue. The USPTO issued the new registration certificate on October 16, 2018, and PW Stoelting's counsel filed its motion to supplement a week later. PW Stoelting did not unduly delay filing its amendment request with the USPTO or its motion to supplement with the court. Defendants' assertion that PW Stoelting is attempting to file a sur-reply is simply false. PW Stoelting has instead merely submitted the updated

registration certificate for consideration by the court. Defendants have suffered no prejudice. Accordingly, PW Stoelting's motion to supplement the fact record is granted.

Regardless, Defendants argue that "there was no valid renewal registration to amend because Plaintiff's renewal application was void *ab initio* when the Section 8 Renewal Declaration was filed by and under the name of the wrong entity," Defs.' Reply to Mot. to Supplement, ECF No. 127 at 2, and that the court should cancel the trademark registration pursuant to 15 U.S.C. § 1119. A list of correctable and non-correctable errors is set forth in § 1201.02(c) of the Trademark Manual of Examining Procedure. Defendants point to the following non-correctable error in support of their argument: "If an application is filed in the name of entity A, when the mark was assigned to entity B before the application filing date, the application is void as filed because the applicant was not the owner of the mark at the time of filing." § 1201.02(c), Non-Correctable Errors (2).

Vollrath's application, however, is not void because PW Stoelting was not a legally distinct entity at the time it submitted the required documentation in January of 2017 as it was already a division of Vollrath at that point due to the merger on December 31, 2016. While the Trademark Manual of Examining Procedure does not appear to provide a definition of entity, other definitions and decisions of the Trademark Trial and Appeal Board (TTAB) evince a definition focused on whether the entity exists as an individual legal identity. *Accu Pers. Inc. v. Accustaff Inc.*, 38 U.S.P.Q.2d 1443 (T.T.A.B. Feb. 23, 1996) (denying summary judgment that application was void *ab initio* because the four companies "did not survive the merger as entities separate and apart from the corporation" that was listed as owner); *see also In Re Atlanta Blue Print Co.*, 19 U.S.P.Q.2d 1078 (Com'r Pat. & Trademarks Sept. 12, 1990) (accepting Section 8 declaration where owner filed under its trade name because the trade name is "not a separate legal entity"); *Re: Trademark Registration of Ace III*

15

*Commc'ns, I Nc.*, 62 U.S.P.Q.2d 1049 (T.T.A.B. Dec. 6, 2001) (cancelling registration because an individual is a separate entity from a corporation); *In Re Media Cent. Ip Corp.*, 65 U.S.P.Q.2d 1637 (Com'r Pat. & Trademarks July 2, 2002) (refusing a Section 8 Declaration because a subsidiary is a separate entity from the parent company).

PW Stoelting is more akin to an operating division as defined by the Trademark manual of Examining Procedure: "An operating division that is not a legal entity that can sue and be sued does not have standing to own a mark or to file an application to register a mark." § 1201.02(d). As such, Vollrath's submissions are not void *ab initio* because filing the required documentation under the name of an operating division is a correctable error. § 1201.02(c), Correctable Errors (2). Given that the error was correctable, and has since been corrected by the USPTO, cancelling the Stoelting mark would be improper.

Defendants also argue that Vollrath's attempt to renew the PW Stoelting mark was done fraudulently and that the mark should be cancelled as a result. "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986)). "[A] trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO." *Id.* at 1245. "When drawing an inference of intent, 'the involved conduct, viewed in light of all the evidence . . . must indicate sufficient culpability to require a finding of intent to deceive.'" *Id.* (quoting *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 867 (Fed. Cir. 1988)).

Defendants' argument fails, however, because the record does not support their claim that Vollrath's renewal application was made with intent to deceive, as opposed to simply being a mistake. "There is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." *Id.* at 1246 (citing *Smith Int'l, Inc. v. Olin Corp.*, 209 U.S.P.Q. 1033, 1043 (T.T.A.B. 1981)). In support of their claim Defendants merely point out the fact that in the renewal application PW Stoelting was listed as the owner of the mark and Paul Egbert identified himself as the Vice-President of Marketing for PW Stoelting when he signed the supporting declaration. But while the renewal application was admittedly incorrect in these respects, there is no reason to believe that the error was anything but inadvertence on the part of PW Stoelting or its attorneys. Defendants have failed to offer any evidence that the errors were *intended* to deceive rather than merely the result of negligence, and "[m]ere negligence is not sufficient to infer fraud or dishonesty." *Id.* at 1244 (quoting *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1582 (Fed. Cir.1991)). As a result, Defendants have failed to meet their burden.

## 2. First Sale Doctrine and Trademark Infringement

Defendants assert that PW Stoelting's trademark claim should be dismissed because their use of the Stoelting trademark is permissible under the first sale doctrine. Generally, "trademark law does not apply to the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner." *Standard Process, Inc. v. Banks*, 554 F. Supp. 2d 866, 869 (E.D. Apr. 18, 2008), *amended*, No. 06-C-843, 2008 WL 11344638 (E.D. Wis. June 17, 2008). This rule, known as the first sale doctrine, provides that "'the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product.'" *Id.* (quoting *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir.1995)). PW Stoelting claims that the first sale

doctrine is not applicable because Defendants' websites give the impression that they are authorized dealers of products that bear the Stoelting trademark. "[T]he first sale doctrine does not protect unauthorized resellers who use other entities' trademarks when such use gives a reasonable impression that the resellers are authorized dealers for a product." *Id.*; *see Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1240–41 (10th Cir. 2006); *Trudeau v. Lanoue*, No. 04 C 7165, 2006 WL 516579, at *4 (N.D. Ill. Mar. 2, 2006).

Here, based on the record, a reasonable jury could find that Defendants' representations on their website could give the impression that the resellers are authorized dealers of PW Stoelting's product, negating the application of the first sale doctrine and rendering summary judgment on this issue inappropriate. While the parties dispute much regarding what was present on the website after the distributorship agreement was terminated on January 31, 2016, it is undisputed that in February and March of 2016, pages on AFTT and Prism's websites were titled "Superior Freezers CA new and used Stoelting frozen treat equipment" and "Superior Freezers NW new and used Stoelting frozen treat equipment," implying that they could sell new PW Stoelting equipment which they could no longer do once the distributorship agreement ended. Additionally, in March of 2016 both AFTT and Prism's websites contained links next to PW Stoelting product images that led to full-color Stoelting-produced specification sheets about the equipment, which can also lead to consumer confusion. *See D 56, Inc. v. Berry's Inc.*, 955 F. Supp. 908, 920 (N.D. Ill. 1997) ("[R]esale of plaintiff's genuine trademarked products does not shield them from charges of trademark infringement where they use plaintiff's trademark and promotional materials in its displays and advertising."). Although Defendants claim that they got the specification sheets from publicly accessible sources, the issue is not the source of the sheets but the effect linking to and displaying them with PW Stoelting products has upon consumers

and whether it leads to consumer confusion. "'The "keystone" of trademark infringement is "likelihood of confusion" as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers.'" *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015) (quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992)); *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 835 (10th Cir. 2005) ("[T]he relevant confusion under trademark law is not limited to confusion of consumers as to the source of the goods, but also includes confusion as to sponsorship or affiliation."). Defendants also continued to use the word "Stoelting" in metatags on their websites after the termination of the agreement, including 85 uses of the word in metatags on AFTT's website. The use of a trademark in metatags can also lead to consumer confusion. *See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1064 (9th Cir. 1999) ("Using another's trademark in one's metatags is much like posting a sign with another's trademark in front of one's store."); *see also Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002) (finding a "strong likelihood of consumer confusion" as a result of the use of a trademark as a metatag). Finally, there is evidence of actual customer confusion. At least one customer sent a purchase order for Stoelting equipment to AFTT in April and July of 2016 and referred to AFTT as "Superior Freezers/Stoelting." For all of these reasons, Defendants are not entitled to summary judgment on PW Stoelting's trademark claim under the first sale doctrine.

Defendants also attempt to argue that PW Stoelting's trademark claim should be dismissed because there is nothing in the record that could establish a likelihood of consumer confusion. "Likelihood of confusion is a question of fact, which means that summary judgment is appropriate only if no reasonable factfinder could find in favor of the nonmoving party on that issue. *Epic Sys. Corp. v. YourCareUniverse, Inc.*, 244 F. Supp. 3d 878, 890 (W.D. Wis. 2017) (citing *Sorensen*, 792 F.3d

at 726). Based on the previously discussed facts and evidence, the court is convinced that a reasonable factfinder could find in favor of PW Stoelting regarding consumer confusion. Accordingly, Defendants' motion for summary judgment with regards to PW Stoelting's trademark infringement claim is denied.

## D. Breach of Contract Claim

Defendants also attempt to argue that they are entitled to summary judgment with respect to PW Stoelting's breach of contract claim. PW Stoelting has alleged that Defendants owe PW Stoelting in excess of $200,000 for equipment ordered for Menchie's franchisees by Defendants. While Defendants dispute the amount owed, arguing that they are owed credits from PW Stoelting that would reduce the balance owed, Defendants have failed to point to undisputed facts that establish they are entitled to summary judgment regarding PW Stoelting's breach of contract claim. Their motion for summary judgment is therefore denied with respect to this claim.

## CONCLUSION

For the foregoing reasons, PW Stoelting's motion to substitute The Vollrath Company, L.L.C. as the plaintiff in this case (ECF No. 108) is **GRANTED**. The clerk is directed to substitute The Vollrath Company, L.L.C. for PW Stoelting as Plaintiff in this case. Defendants' motion to not expedite PW Stoelting's motion to substitute (ECF No. 116) is **DENIED as moot**. PW Stoelting's motion to supplement the fact record for summary judgment (ECF No. 123) is **GRANTED** and Defendants' motion to strike PW Stoelting's motion to supplement the fact record for summary judgment (ECF No. 128) is **DENIED**. PW Stoelting's motion for partial summary judgment (ECF No. 86) is **GRANTED** and Defendants' motion for summary judgment (ECF No. 94) is **DENIED**.

Dated this  17th  day of December, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court